DANIEL DUDLEY *et als.*, trustees, and WILLIAM W. BOLSTER, bank examiner, petitioners in the matter of the NEWPORT SAVINGS BANK, in insolvency.

Penobscot.    Decided August 21, 1878.

*Savings banks.    Form of a decree.*

Under the act of 1877, c. 218, § 36, this court has no power to proceed and reduce the deposits of a savings bank, if it appears, upon an examination of its assets and liabilities, and from other evidence, that it has exceeded its powers, or failed to comply with the rules, restrictions and conditions provided by law for its government in the management of its affairs; notwithstanding such violation of law has not caused nor contributed to its insolvency.

A violation of the rules, restrictions and conditions provided by law for the investment of the funds and deposits of the bank, by the trustees, is a violation of such rules, restrictions and conditions by the corporation, within the meaning of said act.

The court has no power to order the sums to which the deposits are reduced to be paid by installments.

Form of a decree.    See statement of case.

ON REPORT.

PETITION, drawn under section 36 of c. 218, of the acts of 1877, for reducing the deposit and dividing the loss *pro rata*

among the depositors, and for such other orders and decrees as are authorized under that section.

The following report was drawn up by Appleton, C. J., presiding: "Penobscot, ss. Supreme judicial court, April term, 1878. In the matter of Newport Savings Bank, upon the petition of the trustees of the same, and William W. Bolster, bank examiner, under the act of 1877, c. 218.

" Due notice of the time and place of hearing having been given, the bank examiner and the petitioning trustees appeared, and the depositors also who objected to the granting of the prayer of said petition appeared by William H. McCrillis and F. H. Appleton, their attorneys.

" Upon examination of the records of the bank and other evidence before me, it appeared that in one instance a large loan, to the amount of $23,000, was effected on real estate in Kansas; that the loan not being paid, the property was sold by the bank to E. W. Shaw, then one of the trustees, for $10,000; that, in repeated instances, loans had been made to trustees, and to firms of which they were members, and to principals where they were indorsers; and that loans had been made on personal security in two or three instances.

" It was insisted by the depositors objecting, that, inasmuch as the rules, restrictions and conditions provided by law had been violated as herein set forth, that the court had no jurisdiction in the premises; but I ruled otherwise, and, upon a full hearing, I deemed it for the interests of the depositors and the public to reduce the deposit account of each depositor to sixty per cent of his deposit.

" It was claimed that the amount to be paid to depositors might be authorized to be paid in installments, designating the time of such payments; but I declined so to do. My decree was as follows: 'Whereas, the foregoing petition, on the fifth day of March, A. D. 1878, in vacation, was duly presented to me, one of the justices of said court, and a time for the examination of the affairs of said corporation was duly appointed by me, as prayed for; and, whereas, due notice thereon of the time and place of the intended examination thereof was duly given to all parties interested

therein, pursuant to the foregoing order, and, upon examination of the assets and liabilities of said institution, and from other evidence introduced at the time and place appointed by said order for said examination, being satisfied of the facts set forth in said petition, and that said corporation has not exceeded its powers, nor failed to comply with any of the rules, restrictions and conditions provided by law, and finding the actual liabilities of said institution to be $91,538.77, consisting of the amount due depositors, amounting to $91,413.77, and other liabilities amounting to $125.00; and the assets to be $91,413.77, as appears by the books of said corporation, and estimating the value of said assets as available at the sum of $54,973.26, and the loss on and by depreciation of the value of the same at $36,440.51, and deeming it for the interest of the depositors in said institution and the public, it is therefore decreed, in order to divide such loss *pro rata* among said depositors, thereby rendering the said corporation solvent, so that its further proceedings shall not be hazardous to the public or those having or placing funds in its custody, that the deposit account of each of said depositors be and is hereby reduced to sixty per cent of the amount due on the same, which is the sum fixed by the court that may be drawn from said corporation in conformity to law, and that no larger sum shall be withdrawn from said institution until further decree of court.

" ' And it is further decreed and ordered that the treasurer of said corporation and his successors keep an accurate account of all sums hereafter received by said institution for the assets of the corporation held by it at the time of filing the aforesaid petition; and if a larger sum shall be realized therefrom than the value estimated as aforesaid by the court, to render, at such time or times as the court may prescribe, a true account thereof, that the court may thereupon, after due notice thereof to all parties interested, declare a *pro rata* dividend of such excess among the depositors, at the time of filing the aforesaid petition.'

" If, by reason of the objections herein set forth, this court, for the causes stated, has no jurisdiction, the petition is to be dismissed.

" The court is also to determine if authority is given by statute, to order the amount to be paid, to be paid in installments.

" The petition of the trustees and bank examiner may be referred to, or made part of this case, and the objections filed."

*E. Walker*, for the petitioners, contended that the limiting clause in § 36, c. 218: "and that the corporation has not exceeded its powers, nor failed to comply with any of the rules, restrictions or conditions provided by law," should not be literally and strictly construed, and was subject to the implied condition that such violation of law caused or contributed to the insolvency.

*S. F. Humphrey & F. H. Appleton*, for the objecting depositors, contended for strict construction, and that the court had no discretionary power, no jurisdiction to grant the petition, unless the conditions precedent in § 36 had been complied with, and cited Potter's Dwarris on Statutes, 224, note and cases cited. *People* v. *Schermerhorn*, 19 Barb. 540, 558. *U. S.* v. *Warner*, 5 McLean, 178. *Nicholson* v. *U. S.*, Deveraux, C. C. R. 158. *Jackson* v. *Lewis*, 17 Johns. 475. *People* v. *N. Y. Central Railroad Co.*, 13 N. Y. 78.

LIBBEY, J. This is a petition by the trustees of the Newport Savings Bank, and the bank examiner, for reducing the deposits of the bank, by virtue of c. 218, § 36, of the acts of 1877. It involves the true construction of that section, which reads as follows :

"Sect. 36. Whenever any savings bank, institution for savings, or trust and loan association, shall be insolvent, by reason of loss on, or by depreciation in the value of, any of its assets, without the fault of the trustees thereof, the supreme judicial court, in term time, or any justice thereof, in vacation, shall, on petition, in writing, of a majority of the trustees, and the bank examiner, setting forth such facts, appoint a time for the examination of the affairs of such corporation, and cause notice thereof to be given to all parties interested, in such manner as may be prescribed; and if, upon an examination of its assets and liabilities, and from other evidence, he shall be satisfied of the facts set forth in said petition, and that the corporation has not exceeded its powers, nor failed to comply with any of the rules, restrictions and conditions provided by law, he may, if he shall deem it for the interest of

the depositors and the public, by proper decree, reduce the deposit account of each depositor, so as to divide such loss *pro rata* among the depositors, thereby rendering the corporation solvent, so that its further proceedings would not be hazardous to the public, or those having or placing funds in its custody, and the depositors shall not be authorized to draw from such corporation a larger sum than thus fixed by the court, except as hereinafter provided; provided, however, that it shall be the duty of the treasurer of such corporation to keep an accurate account of all sums received for such assets of the corporation held by it at the time of filing such petition; and if a larger sum shall be realized therefrom than the value estimated as aforesaid by the court, he shall, at such time or times as the court may prescribe, render to the court a true account thereof, and thereupon the court, after due notice thereof to all parties interested, shall declare a *pro rata* dividend of such excess among the depositors at the time of filing the petition. No deposit shall be paid or received by such corporation after the filing of the petition, till the decree of the court reducing the deposits as herein provided. If the petition is denied, it shall be the duty of the bank examiner to proceed for the winding up of the affairs of the corporation as provided in section thirty-five."

Under this statute, has the court power to proceed and reduce the deposits, if it appears that the corporation has exceeded its powers or failed to comply with any of the rules, restrictions and conditions provided by law for its government in the management of its affairs? The main contention between the parties is upon this question.

In behalf of the petitioners, it is contended that the statute should be so construed that, if the corporation has exceeded its powers, or failed to comply with any of the rules, restrictions and conditions provided by law for the management of its affairs, the court shall have power to reduce its deposits, if it appears that such violation of law did not cause or contribute to its insolvency.

On the other hand, it is claimed by the respondents that, when it appears that the corporation has exceeded its powers, or failed to comply with any of the rules, restrictions and conditions pro-

vided by law, the observance of which the legislature has declared essential for the security and safety of its funds and deposits, the court has no power, under this statute, to proceed and reduce the deposits, though it does not appear that such violation of law has caused or contributed to the insolvency of the bank.

Prior to the act of 1877, when a savings bank became insolvent, on application to the court, it was to be enjoined from doing any further business under its charter, and its affairs were to be settled under the direction of the court. It thereupon ceased to have any existence under its charter. But the legislature, acting upon the fact of the large depreciation in the value of some classes of property in which savings banks had properly invested, anticipated that they might become insolvent, without the fault of the trustees, and without any violation of law in the management of their affairs, and still be entitled to the confidence of the public; and to meet such cases enacted this statute.

The statute, being in derogation of the common law right of the depositor, under the contract of the deposit, to draw out the full amount of his deposit, and, if refused by the bank after due notice, to maintain an action against it therefor, is not to be extended by construction beyond its clear and obvious meaning. In ascertaining the meaning of the section involved, all of its clauses, as well as all other provisions of the act, so far as they tend to modify or control it, are to be considered. The act is entitled, " An act to revise and consolidate the laws relating to the government, powers, duties, privileges and liabilities of savings banks and institutions for savings." It clearly defines the powers of savings banks, and prescribes the rules, restrictions and conditions by which they shall be governed, so that their proceedings shall not be hazardous to the public, or those having or placing funds in their custody. It prescribes the classes of securities and property in which savings banks may invest their funds and deposits, and prohibits investment in any other kinds of property or securities. Section 35 authorizes the bank examiner, " if he is of opinion that such corporation has exceeded its powers, or failed to comply with any of the rules, restrictions or conditions provided by law," to apply to the court for an injunction, and gives the

court power, for such cause, to pass a decree of sequestration and cause the affairs of the bank to be wound up, notwithstanding it may be solvent.

What, then, is the clear and obvious meaning of the legislature as declared in § 36? What is the language used? "Whenever any savings bank . . shall be insolvent, by reason of loss on, or by depreciation in the value of, any of its assets, without the fault of the trustees thereof, the supreme judicial court . . shall, on petition, in writing, of a majority of the trustees, and the bank examiner, setting forth such facts, appoint a time for the examination of the affairs of such corporation, . . and if, upon an examination of its assets and liabilities, and from other evidence, he shall be satisfied of the facts set forth in said petition, and that the corporation has not exceeded its powers, nor failed to comply with any of the rules, restrictions and conditions provided by law, he may, . . by proper decree, reduce the deposit account of each depositor," etc. This language is clear, direct and unambiguous. We find nothing in the other provisions of the act to modify, restrict or control its meaning.

The bank is insolvent. It comes into court and asks for the privilege granted in this section. But for its provisions the court must pass a decree of sequestration, and cause its affairs to be wound up, and it would then cease to exist as a corporation. It asks for a new lease of life. It asks to have its legal liabilities reduced to such an amount as the court, in its discretion, may deem proper; and to have a stay of any further legal remedy, by the depositor, against it, for the balance of his deposit, till it, in the management of its affairs as it may see fit, may realize from its assets, on hand at the time of the application to the court, a sum larger than the amount of the deposits as fixed by the court.

By the provisions of this section the court has power to grant this privilege, if it is satisfied from an examination of the assets and liabilities of the bank, and from other evidence, that it is insolvent, by reason of loss on, or depreciation in the value of, any of its assets without the fault of its trustees, and that it has not exceeded its powers, nor failed to comply with any of the rules, restrictions and conditions provided by law, for its gov-

ernment in the management of its affairs. Proof of these facts is a condition precedent to the exercise by the court of the power to reduce the deposits. If such facts do not appear the court has no power to proceed. No other construction can be put upon this section without entirely disregarding its plain, clear and positive language. To declare that the violations of law specified do not deprive the bank of the privilege claimed, if it appears that such violations did not cause or contribute to the insolvency, is not to declare the clear and plain meaning of the language, but would be legislation by the court; and it would be the declaration of a policy calculated to be destructive of the whole system of savings institutions. A savings bank is a trustee for its depositors. Its affairs are managed by trustees, who are required to give no security for the faithful discharge of their trust. It receives the funds of widows and orphans, and the small savings of the laboring classes. The first great object to be accomplished is security. The trustee should never be allowed to make speculative or hazardous investments. Establish the rule that a savings bank may do so ; that it may invest its funds and deposits in violation of the provisions of law; that it may loan to its own trustees on their personal security, and sell to one or more of them its assets, without prejudice or the loss of any rights, unless it appears that loss results therefrom, and disaster and bankruptcy must be expected, followed by a loss of public confidence in these institutions, which, when properly managed, accomplish so much good. A policy calculated to hazard such vast interests as are held in charge by these institutions, in this state, cannot be sanctioned, unless clearly declared by the legislature.

It is said, in behalf of the petitioners, that this construction of the statute will be attended with very serious consequences; that very few, if any, of the savings banks in the state which are insolvent, have managed their affairs in accordance with the rules, restrictions and conditions provided by law; and that great loss will result to depositors by converting the assets of the banks into cash at the present time of business depression and depreciated values, as well as great hardship to their debtors. This argument may be entitled to weight when addressed to the legisla-

ture in favor of a change of the statute. But we must declare the law as we find it. The legislature has established the rule, and it is for it to change it, if satisfied that the public interests require it.

But it is further contended by the petitioners that, in this case, the acts claimed to be violations of the rules, restrictions and conditions provided by law are not acts of the corporation, but of its trustees. The report of the justice who heard the case finds that, " Upon the examination of the records of the bank, and other evidence before me, it appeared that in one instance a large loan to the amount of $23,000 was made on real estate in Kansas; that the loan not being paid, the property was sold by the bank to E. W. Shaw, then one of the trustees, for $10,000; that, in repeated instances, loans have been made to trustees, and to firms of which they were members, and to principals where they were indorsers." These acts were acts of the corporation within the meaning of the statute. By § 4, "The members of the corporation shall annually, at such times as may be provided in their by-laws, elect from their number not less than five trustees, who shall have the entire supervision and management of the affairs of the institution, except so far as may be otherwise provided by their by-laws." Section 10 prescribes the classes of securities and property in which savings banks may invest their funds and deposits. By § 14, " The trustees shall see to the proper investment of deposits and funds of the corporation in the manner hereinbefore prescribed. No loan shall be made, directly or indirectly, to any of the trustees, or any firm of which he is a member." In making investments and managing the affairs of the bank, the trustees represent the corporation. In regard to these matters, it can act in no other way. The acts of the trustees are the acts of the corporation. The acts found by the report are palpable violations, by the corporation, of the rules, restrictions and conditions provided by law for the management of its affairs, and the court has no power to proceed and reduce the deposits.

By the report the court is to determine if any authority is given by statute to order the amount to be paid, to be paid in

installments. By the statute we find no power given to the court to decree when the sum to which the deposits are reduced shall be paid to the depositors; that is fixed by law. The court has no power, by its decree, to stay the remedy of the depositor for the whole, or any portion, of the sum to which his deposit is reduced. It has no power to order such sum paid by installments.

*Petition dismissed.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.